FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  JAN 25 2022  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MICHAEL R. JOHNSTON

      Plaintiff,

vs.

SPROUT MORTGAGE LLC.

      Defendant.

_____/

CASE NO:



CV 22- 423

AZRACK, J.

WICKS, M.J.

## COMPLAINT

Plaintiff, MICHAEL R. JOHNSTON ("Plaintiff", or "JOHNSTON"), by and through undersigned counsel, hereby sues Defendant, SPROUT MORTGAGE LLC ("SPROUT") and as grounds therefore, Plaintiff alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Defendant SPROUT is a Delaware Limited Liability Company with its principal place of business in East Meadow, New York.

2. Plaintiff JOHNSTON is a citizen of Florida, and resides in Miami-Dade County, Florida.

3. Venue is proper in this Court because the contractual agreements which the Defendant negotiated and executed with JOHNSTON, and which are at issue in this case, include a specific agreement that each party submits to the jurisdiction and venue of the state or federal courts in Nassau County, New York.

4. Pursuant to 28 U.S.C. § 1332, this court has subject-matter jurisdiction because there is complete diversity of the parties, and the amount of damages sought exceeds $75,000.

5.      At all times material hereto, Plaintiff was an employee of the Defendant.

### FACTUAL ALLEGATIONS

6.      JOHNSTON is a veteran of the mortgage industry, with over 20 years of experience.

7.      On or about May 5, 2021, SPROUT recruited JOHNSTON to be the Senior Vice President of Retail Distribution.

8.      In recognition of JOHNSTON's extensive industry experience, he was offered employment at a base salary of $325,000 per annum, paid in semi-monthly installments, as well as a monthly guarantee ($106,250 per month for the first year of employment), which was payable monthly during the term of JOHNSTON's employment. The employment agreement ("Agreement") between SPROUT and JOHNSTON is in writing and is attached hereto as **Exhibit 1** and the schedule showing monthly guarantee payments is initialed by both SPROUT and JOHNSTON and attached to the Agreement at the end as page 8.  Below is a screenshot of the Section 3 compensation terms of the Agreement:

3.      COMPENSATION.  During the Term, but in no event after the Term, Sprout shall provide the Executive the following compensation:

    (a)  A base salary of three hundred twenty-five thousand dollars ($325,000) per year, payable in equal semi-monthly installments;

    (b)  A monthly guarantee as follows:

        For the twenty-seven (27) month period beginning on the first day of the first full month after the first day of the Term and ending twenty-six (27) months thereafter: for each month within such period the amount set forth on Exhibit 1 across from the applicable month and under column 2 (the column labeled "Guarantee").

Agreement, **Exhibit 1** at Section 3 (highlighting added for emphasis).

9.     The monthly guarantee was due monthly and paid by SPROUT to JOHNSTON via direct deposit on a monthly basis through September 2021.

10.     The Agreement set forth specific terms for how JOHNSTON's employment could be terminated. Notably, Section 7 of the Agreement contains a provision requiring a minimum of 21 days' notice of termination before said notice becomes effective:

> 7.     TERMINATION.
>
> The employment created hereunder is at will, and either Party hereto may terminate this Agreement by delivering a notice to the other Party hereto setting forth the date of termination, which shall not be less than twenty-one (21) days after the date of such notice, provided that, if (i) a change of control occurs wherein the equity holders of Sprout as of the date hereof do not retain voting control of Sprout after such change of control, and (ii) Executive's employment hereunder is terminated within one hundred eighty (180) days of such change of control, then a notice of termination given by Sprout within one year of such change of control shall shall not be effective earlier than ninety (90) days from the date of such notice of termination. Notwithstanding the foregoing, Sprout may terminate this Agreement and the employment created hereunder immediately upon giving notice to the Executive of such termination if, in the reasonable opinion of Sprout, Executive has intentionally acted in a manner that materially and adversely jeopardizes the security, reputation or business interests of Sprout.

Agreement, **Exhibit 1** at Section 7 (highlighting added for emphasis).

11.     Pursuant to the Agreement, JOHNSTON performed all lawful duties assigned to him by SPROUT and JOHNSTON devoted his entire working time, attention, and working energies to the performance of those duties.

12.     On the morning of Friday October 22, 2021, JOHNSTON was telephoned by SPROUT's President, Shea Pallante. At the conclusion of that phone call, Mr. Pallante verbally informed JOHNSTON that his employment was being terminated with SPROUT. Mr. Pallante stated to JOHNSTON that JOHNSTON would be contacted by SPROUT's Director of Human Resources, Rebecca Yoselowitz, to discuss the particulars of his termination and the signing of a severance agreement.

13.     On Monday October 25, 2021, SPROUT, via its HR Director Yoselowitz, delivered a notice to JOHNSTON (via email) informing JOHNSTON that SPROUT would be terminating his employment effective at the end of the following month, November 30, 2021. A copy of this termination notice email is attached hereto as **Exhibit 2**. Also included with the termination notice email was a draft severance agreement for JOHNSTON's review.

14.     In the termination notice email, Yoselowitz gave JOHNSTON 45 days to review and execute the severance agreement as set forth in the below screenshot:

**From:** Rebecca Yoselowitz
**Sent:** Monday, October 25, 2021 3:03 PM
**To:** fjohnstonmichael007@gmail.com
**Subject:** Separation Agreement

Hi Michael,

As a follow up to your conversation with Shea, attached, please find the referenced agreement for your review. This email serves as confirmation that you will receive your full salary and remain active on the benefit plans for the month of November.
The additional pay and benefits beyond November are contingent upon acceptance of the agreement attached. Please note you have 45 days to review, sign and return the agreement to my attention. Once we receive the document back, we must wait 7 days (revocation period) before your payments can commence.

You will be eligible for Cobra once your benefits end date is confirmed.

You will also receive a shipping label to return any equipment you might have.

Please let me know if you have any questions.

Thanks,

Rebecca

 Sprout Mortgage

Rebecca Yoselowitz
Director of Human Resources
O: 516.393.0265
rebecca.yoselowitz@sproutmortgage.com

**QUARANTA P.A. TRIAL LAWYERS**
**1600 Ponce De Leon Blvd., 10th Floor   Coral Gables, Florida 33134**
**Telephone 305.930.6077**

**Exhibit 2 (**highlighting added for emphasis).

15.     On October 29, 2021, Yoselowitz emailed JOHNSTON and informed him that SPROUT was unilaterally and immediately revoking the proposed severance agreement.

16.     Pursuant to Yoselowitz' October 25, 2021, notice of termination email, SPROUT was terminating JOHNSTON effective November 30, 2021, and thus SPROUT was required to pay JOHNSTON his Section 3 contractual compensation through his termination date of November 30, 2021.

17.     On October 15 and November 8, 2021, SPROUT issued paychecks to JOHNSTON for the month of October including his annual base salary [Agreement at Section 3(a)] but improperly withheld JOHNSTON's October 2021 monthly guarantee [Agreement at Section 3(b)].

18.     On November 22, 2021, and December 7, 2021, SPROUT issued paychecks to JOHNSTON for the month of November including his annual base salary [Agreement at Section 3(a)] but improperly withheld JOHNSTON's November 2021 monthly guarantee [Agreement at Section 3(b)].

19.     Accordingly, SPROUT improperly withheld two months of guaranteed payments of $106,250 each.  These two months equaled $212,500 in total guaranteed payments due Johnston under the Agreement. *See,* Agreement, **Exhibit 1** at Section 3(b) and at p. 8.

20.     The Agreement provides that attorneys' fees shall be provided to the prevailing party should a party find it necessary to retain counsel in connection with the enforcement of the agreement. *See,* Agreement, **Exhibit 1** at Section 13.

21.    Plaintiff has retained undersigned counsel in this matter and has agreed to pay them a reasonable fee.

22.    All conditions precedent to the filing of this lawsuit have either occurred or have been waived.

## COUNT I – BREACH OF CONTRACT

23.    Plaintiff realleges paragraphs 1 through 22 as if they were fully set forth herein.

24.    SPROUT and JOHNSTON entered into a valid employment contract which was memorialized in writing in the Agreement. *See* **Exhibit 1**.

25.    Plaintiff fully performed his obligations under the Agreement.

26.    SPROUT breached the Agreement by failing to pay JOHNSTON his Section 3(b) guarantee payments for October and November 2021.

27.    Plaintiff has been damaged by SPROUT's breach of the Agreement.

**WHEREFORE**, Plaintiff, MICHAEL R. JOHNSTON, respectfully requests that this Court enter final judgment against the Defendant, SPROUT MORTGAGE LLC., for all damages he is legally and equitably entitled to, including but not limited to reasonable attorneys' fees and costs, and any such further relief that this Court determines to be just and proper.

**Dated this 20th day of January 2022.**

Respectfully submitted,

QUARANTA P.A.
1600 Ponce de Leon Blvd.
10th Floor
Coral Gables, FL 33134
Telephone 305.930.6077

QUARANTA P.A. TRIAL LAWYERS
1600 Ponce De Leon Blvd., 10th Floor   Coral Gables, Florida 33134
Telephone 305.930.6077

By: */s/ Natasha L. Biela*
JOHN M. QUARANTA (FBN 940641)
Email: john.quaranta@quaranta.law
NATASHA L. BIELA (FBN 1024880)
Email: natasha.biela@quaranta.law
Secondary: kristine.rodriguez@quaranta.law

# EXHIBT 1

# EMPLOYMENT AGREEMENT

THIS AGREEMENT (the "Agreement") is made and entered into this 5th day of May 2021, by and between Sprout Mortgage, LLC ("Sprout") and Michael Johnston ("Executive"), Sprout and the Executive together the "Parties").

WHEREAS Sprout, upon the terms and conditions set forth herein, hereby employs the Executive;

WHEREAS the Executive, upon the terms and conditions set forth herein, hereby accepts employment at Sprout;

WHEREAS the parties desire to establish the salary, benefits, working conditions and other terms relating to Executive's employment.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties hereto agree as follows:

1. **EMPLOYMENT.** Sprout agrees to employ the Executive in the position of Senior Vice President, Retail Distribution (the "Position") for the term of this Agreement, and Executive hereby accepts such position upon the terms and conditions set forth in this Agreement.

2. **TERM OF EMPLOYMENT.** The term of the Executive's Employment hereunder shall commence on May 18, 2021, and shall continue until terminated pursuant to Section 7 hereof (the "Term").

3. **COMPENSATION.** During the Term, but in no event after the Term, Sprout shall provide the Executive the following compensation:

   (a) A base salary of three hundred twenty-five thousand dollars ($325,000) per year, payable in equal semi-monthly installments;

   (b) A monthly guarantee as follows:

   > For the twenty-seven (27) month period beginning on the first day of the first full month after the first day of the Term and ending twenty-six (27) months thereafter: for each month within such period the amount set forth on Exhibit 1 across from the applicable month and under column 2 (the column labeled "Guarantee").

   (c) A monthly volume override as follows:

   (i) For the twenty-three (23) month period beginning on the first day of the first full month after the first day of the Term and ending twenty-three (23) months thereafter: for each month during such period, the product of (x) the principal amount of loans that were both (a) originated by a person reporting either directly or indirectly to the Executive, and (b) funded by Sprout during such month, and (y) the percentage (denominated in basis points) set forth on Exhibit 1 across from the applicable month and under column 3 (the column labeled "Basis Points"). For the avoidance of doubt, each basis point is equal to one hundredth of one percent (0.01%).

   (ii) For the period beginning on the first day of the twenty-fifth (24th) full month following the first day of the Term and ending on the last day of the Term: for each month during such period, the product of (x) the principal amount of loans that were both (a) originated by a person reporting either directly or indirectly to the Executive, and (b) funded by Sprout during such month, and (y) three (3) basis points. For the avoidance of doubt, each basis point is equal to one hundredth of one percent (0.01%).

1

Sprout shall deduct customary payroll taxes and deductions from the amount due the Executive pursuant to subsections 3(a), 3(b), 3(c) and 3(d) of this agreement. Sprout shall, each month, present the Executive with a monthly statement showing the calculation of amounts due Executive in accordance with subsections 3(a), 3(b), 3(c) and 3(d). If the Executive disagrees with Sprout's calculations, Executive shall so notify Sprout within twenty-five (25) days of the date of such statement, and absent such notification, on the twenty-sixth (26th) day after the date of such statement, the statement shall be final and deemed correct. The executive shall not be paid monthly guarantee, monthly volume override, or override guarantee pursuant to subparagraphs 3(b), 3(c) or 3(d) after the Term, and no amounts shall be due the Executive pursuant to subparagraphs 3(b), 3(c) or 3(d) that have not been paid prior to the end of the Term.

4.    DUTIES. During the term hereof, the Executive shall perform such lawful duties as are assigned to him by Sprout's Chief Executive Officer or by Sprout's President (the "Duties"). Without limiting the foregoing, the Executive will be the principal executive officer in charge of Sprout's Distributed Retail Channel and shall be responsible for the development, profitability and general success of such channel. Notwithstanding the foregoing, the Executive shall not act in contravention of the lawful instructions of Sprout's Chief Executive Officer or Sprout's President and shall report to Sprout's Chief Executive Officer and Sprout's President.

5.    EXTENT OF SERVICES. Executive shall devote Executive's entire working time, attention, and working energies to the performance of the Duties including being on call during reasonable times and reasonably responding to emergencies outside of the customary workday. Executive shall not work for, perform services for or assist any other business, person or entity for compensation of any kind (other than for Sprout or an affiliate of Sprout). Without limiting the foregoing, Executive shall not perform services that are similar to the Duties for any person or entity other than for Sprout and affiliates of Sprout, and Executive shall take no action that would assist any person or entity that is not an affiliate of Sprout. Notwithstanding the foregoing, the Executive may, outside of Sprout's customary working hours, engage in non-compensated activities provided such activities (A) are not related to the mortgage industry, (B) do not detract from the Duties and (C) are on behalf of non-profit entities that are charitable in nature and which are wholly unrelated to the mortgage industry.

6.    EMPLOYEE BENEFITS. During the Term, Executive shall be entitled to receive the following benefits:

       (a) Eligibility to participate in Sprout's benefit plans which include options for medical, dental, vision, life insurance, AD&D, long term disability and Flexible Spending Accounts; eligibility begins for the first full month of employment after thirty days from the first day of the Term.

       (b) Eligibility to participate in Sprout's 401(k) plan; eligibility begins for the first full month of employment after ninety days from the first day of the Term.

       (c) Eligibility for twenty-five (25) days of paid time off ("PTO") per calendar year which may be used for vacation, sick days or personal days. PTO for the first year of employment shall be prorated based on the number of days remaining in the calendar year as of the first day of the Term. PTO must be used during the calendar year in which it is earned, and unused PTO days do not carry over from year-to-year. No accrued PTO shall be paid out upon separation of employment, and this sentence shall survive the termination of this Agreement.

       (d) Sprout will reimburse Executive for all necessary and reasonable business expenses according to the policies established by Sprout. Appropriate documentation of such expenses must be provided.

2

7. **TERMINATION.**

The employment created hereunder is at will, and either Party hereto may terminate this Agreement by delivering a notice to the other Party hereto setting forth the date of termination, which shall not be less than twenty-one (21) days after the date of such notice, provided that, if (i) a change of control occurs wherein the equity holders of Sprout as of the date hereof do not retain voting control of Sprout after such change of control, and (ii) Executive's employment hereunder is terminated within one hundred eighty (180) days of such change of control, then a notice of termination given by Sprout within one year of such change of control shall shall not be effective earlier than ninety (90) days from the date of such notice of termination. Notwithstanding the foregoing, Sprout may terminate this Agreement and the employment created hereunder immediately upon giving notice to the Executive of such termination if, in the reasonable opinion of Sprout, Executive has intentionally acted in a manner that materially and adversely jeopardizes the security, reputation or business interests of Sprout.

8. **PROPRIETARY INFORMATION**

    (a) Executive represents and warrants that Executive is not bound by any agreement with any third party containing a non-competition provision or other restriction that would prohibit Executive's employment with Sprout, or which would conflict with or affect Executive's ability to perform the Duties or otherwise comply with the terms of this Agreement.

    (b) Executive agrees not to disclose to Sprout, or to use in work performed by the Executive at Sprout: (a) any confidential or proprietary information belonging to others, including prior employers, unless appropriate written authorization is first obtained from (x) the owner of such confidential or proprietary information and (y) from Sprout, or (b) any prior inventions made by Executive which Sprout is not otherwise entitled to learn of or to use.

    (c) Executive further agrees not to use, publish, or otherwise disclose to others any trade secret information, or other confidential proprietary and protected business information that is disclosed to Executive and to which Executive has access to during his employment hereunder, except to the extent authorized by Sprout's Chief Executive Officer or Sprout's President. In the event that Executive's employment with Sprout is terminated for any reason, Executive further agrees not to use, publish, or otherwise disclose to others any such information so long as the same remains a trade secret and/or is confidential.

9. **INVENTIONS AND OTHER NEW DEVELOPMENTS**

    (a) Executive hereby assigns to Sprout as its exclusive property and waive all rights to the entire right, title and interest in all inventions, innovations, designs, discoveries, ideas and other works, regardless of whether they are patentable, and all copyrightable work, developed or conceived by Executive solely, or jointly with others, at any time during Executive's employment with Sprout and which inventions, innovations, designs, discoveries, ideas or copyrightable works: (a) relate to the business of Sprout or to its actual or demonstrably anticipated research or development; (b) result from, or are suggested by, work that Executive does for Sprout; or (c) involve the use of any equipment, supplies, facilities, confidential information or time of Sprout (individually and collectively "New Developments").

    (b) Executive agrees to make and maintain records of any New Development referred to above and to submit promptly such records and supplemental oral disclosures to designated representatives of Sprout.

    (c) Executive further agrees to execute all papers, and otherwise provide proper assistance, at Sprout's request and expense, during and subsequent to Executive's employment by Sprout to enable Sprout or its nominees to obtain patents, copyrights, and/or legal protection for inventions, innovations and/or creative works related to any New Development in any

3

country.

10. **CONFIDENTIALITY**

(a) Executive recognizes that, as a result of employment with Sprout, Executive will have access to and possess Confidential Information as defined below, which is a valuable asset of Sprout and which, if disclosed or used without authorization, could cause irreparable harm to Sprout. Therefore, Executive agrees that, except as required by a lawful order of a court of competent jurisdiction or to the extent that Executive has written authorization from the President of Sprout, Executive will not, at any time or in any manner whatsoever, either directly or indirectly, reveal, divulge, disclose, or communicate to any person, firm or corporation or use for Executive's benefit or for the benefit of others any Confidential Information. Executive further agrees to take all reasonable measures available to safeguard and maintain the confidentiality of such Confidential Information.

(b) For the purpose of this Agreement, "Confidential Information" shall include, any confidential proprietary information concerning any matters affecting or relating to the business of Sprout, regardless of whether it constitutes a trade secret, including but not limited to: (a) any information concerning the identity of Sprout's clients or prospective clients or their accounts within the last twelve months; (b) any information regarding the content and/or mode of operation of Sprout's business practices; (c) any information concerning Sprout's forensic mortgage loan reviews; (d) any information concerning Sprout's analysis or review of findings to ensure alignment with securities representations and underwriting policies; (e) any information concerning Sprout's credit or appraisal reviews; (f) any information concerning the business of Sprout, its manner of operation, its finances, plans, processes, products within the last twelve months, techniques, research-in-progress, marketing strategies within the last twelve months, computer programs or other data; (g) any other information or documents which Executive has been told or reasonably ought to know that Sprout regards as confidential within the last twelve months; or (h) information constituting a trade secret or confidential proprietary information. Confidential Information also includes information, knowledge, or data of any third-party doing business with Sprout (actively or prospectively), which such third party identifies as being confidential. Executive's obligations under this paragraph shall survive the termination of employment with Sprout for any reason.

(c) The Executive agrees not to disparage Sprout, either publicly or privately.

(d) Upon termination of employment, or Sprout's earlier request, Executive agrees to immediately deliver to a designated Sprout representative all Sprout property, including, but not limited to, keys, security cards, office equipment, supplies, records, documents, manuals, client lists and information, computer disks and any other material, including all copies and electronically stores versions, relating to Sprout business obtained by Executive during employment with Sprout.

11. **RESTRICTIVE COVENANT**

(a) Executive acknowledges that through Executive's position with Sprout, Executive will learn and will have access to Sprout's employees, valuable confidential information about Sprout, trade secrets and other proprietary information relating to Sprout's business and will acquire extensive background information and knowledge of Sprout's business and the industry in which it operates. Executive further acknowledges that the identities, capabilities and needs of Spout's employees clients, customers, and suppliers are not generally known to the public, and that Sprout has a legitimate business and proprietary interest in such information. Accordingly, Executive agrees that during Executive's employment with Sprout and for twelve (12) month period beginning after the last day of the Term and ending twelve (12) months thereafter, Executive will not directly or

4

indirectly, for Executive or any other person, business, or entity individually, jointly or as a partner, owner, consultant, agent, employee or in any other capacity:

(i) Induce, solicit, recruit, hire, employ, or attempt to do any of the foregoing or assist others in recruiting, hiring or employing any person who is, or was during the twelve (12) month period prior to the last day of the Term, an employee, director, officer, agent or consultant of Sprout (a "Covered Person") to perform services for any entity other than Sprout;

(ii) Solicit any customer of Sprout to acquire products or services offered by Sprout from another person or entity.

Nothing in this section shall be construed to prevent Executive from owning. an investment of not more than one (1) percent of a class of equity securities issued by any competitor of Sprout is publicly traded and registered pursuant to the Securities Exchange Act of 1933.

(b) Executive acknowledges and agrees that the above restrictions are reasonable in light of Sprout's legitimate significant business interests and the consideration Executive is receiving under this Agreement, and that such restrictions are not overbroad, overlong, or otherwise unreasonable or unnecessary.

12. <u>WAIVER OF JURY TRIAL</u> **Sprout and Executive hereby knowingly, voluntarily, and intentionally waive any right to trial by jury on any matter arising out of or in connection with this Agreement or the relationships among the parties contemplated by this Agreement.**

13. <u>GENERAL TERMS AND CONDITIONS.</u> In consideration of Executive's employment as stated above, Executive further agrees:

(a) Executive acknowledges that if Executive breaches or threatens to breach any of the provisions contained in Section 10 or 11 of this Agreement, in addition to any other rights and remedies it may have, Sprout shall be entitled to injunctive relief, as Executive recognizes that a remedy at law would be inadequate and insufficient. Sprout shall also be entitled to recover from Executive its costs and expenses (including, but not limited to, attorney's fees and court costs) incurred as a result of or arising out of any breach or threatened breach under or pursuant to any provision of Section 10 or 11 of this Agreement, in addition to such other rights or remedies that Sprout may have at law or in equity. If, on the other hand, Sprout initiates such injunctive action against Executive and judgment is rendered in Executive's favor because it is determined that Executive did not engage in a breach or threatened breach of his obligations hereunder, Executive will be entitled to receive his costs and expenses (including. but not limited to, attorneys' fees and costs) related to their defense of such action.

(b) In the event that a Party finds it necessary to retain counsel in connection with the enforcement or defense of this Agreement, the "prevailing party" shall recover its reasonable attorney's fees and expenses from the unsuccessful party. It shall be presumed (subject to rebuttal only by the introduction of competent evidence to the contrary) that the amount recoverable is the amount billed to the prevailing party by its counsel, and that such amount shall be reasonable if billed at the standard billing rates of the prevailing party's counsel. For the purposes hereof, the prevailing party shall be such party as recovers any funds whatsoever from the other party, whether by settlement. judgement or otherwise.

(c) In the event any portion, provision, or section of this Agreement is determined to be unreasonable, the Parties agree that such portion, provision, or section may be modified and narrowed, either by a court or by Sprout, so as to provide the maximum legally enforceable protection of Sprout's interests as described in this Agreement, and without negating or impairing any other restrictions or provisions set forth herein.

5

(d) In the event any portion, provision, or section of this Agreement is determined to be unenforceable, and it is not able to be modified as described in Section 13(C) above, the remainder of this Agreement will not be affected and will be interpreted as if such unenforceable portion, provision, or section was not a part of the Agreement.

(e) This Agreement shall be governed by and construed in accordance with the laws of the state of New York without regard to its choice of law provisions. The parties hereto consent to the jurisdiction and venue of any state or federal court serving Nassau County, New York, in connection with any matter related to or arising out of this Agreement or any breach thereof.

(f) This Agreement replaces any existing agreement, oral or written, between the Parties regarding the subject matter contained herein.

(g) Sprout may assign any of its rights, interests, duties, and obligations under this Agreement without Executive's prior written consent. The Executive may not assign this Agreement.

(h) The provisions in Sections 8, 9, 10, 11, 12 and 13 hereof shall survive the termination hereof and shall continue after the termination hereof as if this Agreement were in full force and effect.

(i) This Agreement may not be modified except in writing with the approval of Executive and of the Chief Executive Officer of Sprout and President of Sprout. No waiver of any provision of this Agreement shall constitute a waiver of any other provision.

*[Signature Page to follow]*

6

EXECUTIVE ACKNOWLEDGES that he has thoroughly read this Agreement, has been given reasonable time to review this Agreement, and has had the opportunity to consult with the counsel of his choice with regard to this Agreement. Executive represents that he enters into this Agreement with full understanding of and consent to the provisions set forth herein.

Sprout Mortgage, LLC (Sprout)

_____

By: Shea Pallante
President

Michael Johnston (the "Executive")

_____
Michael Johnston

# Exhibit 1

| Column Number | Month 1 | Guarantee 2 | Basis Points 3 |
|---|---|---|---|
| | First Full Month After 1st Day of The Term | $106,250 | 0.0 |
| | Second Full Month After 1st Day of The Term | $106,250 | 0.0 |
| | Third Full Month After 1st Day of The Term | $106,250 | 0.0 |
| | Fourth Full Month After 1st Day of The Term | $106,250 | 0.0 |
| | Fifth Full Month After 1st Day of The Term | $106,250 | 0.0 |
| | Sixth Full Month After 1st Day of The Term | $106,250 | 0.0 |
| | Seventh Full Month After 1st Day of The Term | $106,250 | 0.0 |
| | Eighth Full Month After 1st Day of The Term | $106,250 | 0.0 |
| | Ninth Full Month After 1st Day of The Term | $106,250 | 20.0 |
| | Tenth Full Month After 1st Day of The Term | $106,250 | 16.6 |
| | Eleventh Full Month After 1st Day of The Term | $106,250 | 13.9 |
| | Twelfth Full Month After 1st Day of The Term | $106,250 | 11.6 |
| | Thirteenth Full Month After 1st Day of The Term | $81,250 | 9.6 |
| | Fourteenth Full Month After 1st Day of The Term | $81,250 | 8.0 |
| | Fifteenth Full Month After 1st Day of The Term | $81,250 | 6.7 |
| | Sixteenth Full Month After 1st Day of The Term | $81,250 | 5.6 |
| | Seventeenth Full Month After 1st Day of The Term | $81,250 | 4.6 |
| | Eighteenth Full Month After 1st Day of The Term | $81,250 | 3.9 |
| | Nineteenth Full Month After 1st Day of The Term | $56,250 | 6.4 |
| | Twentieth Full Month After 1st Day of The Term | $56,250 | 5.4 |
| | Twenty-first Full Month After 1st Day of The Term | $56,250 | 4.5 |
| | Twenty-second Full Month After 1st Day of The Term | $56,250 | 3.7 |
| | Twenty-third Full Month After 1st Day of The Term | $56,250 | 3.1 |
| | Twenty-fourth Full Month After 1st Day of The Term | $56,250 | |
| | Twenty-fifth Full Month After 1st Day of The Term | $54,000 | |
| | Twenty-sixth Full Month After 1st Day of The Term | $40,000 | |
| | Twenty-seventh Full Month After 1st Day of The Term | $20,000 | |

# EXHIBIT 2

**From:** Rebecca Yoselowitz
**Sent:** Monday, October 25, 2021 3:03 PM
**To:** fjohnstonmichael007@gmail.com
**Subject:** Separation Agreement

Hi Michael,

As a follow up to your conversation with Shea, attached, please find the referenced agreement for your review. This email serves as confirmation that you will receive your full salary and remain active on the benefit plans for the month of November.
The additional pay and benefits beyond November are contingent upon acceptance of the agreement attached. Please note you have 45 days to review, sign and return the agreement to my attention. Once we receive the document back, we must wait 7 days (revocation period) before your payments can commence.

You will be eligible for Cobra once your benefits end date is confirmed.

You will also receive a shipping label to return any equipment you might have.

Please let me know if you have any questions.

Thanks,

Rebecca

 Sprout Mortgage

Rebecca Yoselowitz
Director of Human Resources
O: 516.393.0265
rebecca.yoselowitz@sproutmortgage.com
90 Merrick Avenue
East Meadow, NY 11554

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain proprietary, confidential and/or privileged information.If you are not the intended recipient of this message, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited. If this message has been addressed to you in error, please immediately alert the sender and delete this message and any attachments from all computers.

**From:** Michael Johnston
**Sent:** Friday, October 29, 2021 7:22 AM
**To:** Rebecca Yoselowitz
**Subject:** Re: Separation Agreement

Hi Rebecca,

Yes, thank you so much, I did receive the Separation Agreement.

Have a great weekend!
MJ

Sent from my iPad

> On Oct 28, 2021, at 12:51 PM, Rebecca Yoselowitz
> <Rebecca.Yoselowitz@sproutmortgage.com> wrote:
>
> Hi Michael,
>
> I wanted to reach out to confirm your receipt of the document.
>
> Please advise.
>
> Thanks,
> Rebecca
>
> **From:** Rebecca Yoselowitz
> **Sent:** Monday, October 25, 2021 3:03 PM
> **To:** fjohnstonmichael007@gmail.com
> **Subject:** Separation Agreement
>
> Hi Michael,
>
> As a follow up to your conversation with Shea, attached, please find the referenced
> agreement for your review. This email serves as confirmation that you will receive your
> full salary and remain active on the benefit plans for the month of November.
> The additional pay and benefits beyond November are contingent upon acceptance of
> the agreement attached. Please note you have 45 days to review, sign and return the
> agreement to my attention. Once we receive the document back, we must wait 7 days
> (revocation period) before your payments can commence.
>
> You will be eligible for Cobra once your benefits end date is confirmed.
>
> You will also receive a shipping label to return any equipment you might have.

Please let me know if you have any questions.

Thanks,

Rebecca

<image001.png>

**Rebecca Yoselowitz**
**Director of Human Resources**
**O: 516.393.0265**
rebecca.yoselowitz@sproutmortgage.com
90 Merrick Avenue
East Meadow, NY 11554

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain proprietary, confidential and/or privileged information.If you are not the intended recipient of this message, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited. If this message has been addressed to you in error, please immediately alert the sender and delete this message and any attachments from all computers.

 **Sprout Mortgage**

<u>**CONFIDENTIAL SEVERANCE AGREEMENT**</u>

<u>**AND RELEASE OF ALL CLAIMS**</u>

This Confidential Settlement Agreement and Release of All Claims ("**Agreement**") is made by and between Sprout Mortgage, LLC, ("**SPROUT**") and Michael Johnston ("**EMPLOYEE**"). In consideration for the execution of this Agreement, and the performance of the terms and conditions herein, SPROUT and EMPLOYEE (collectively the "**Parties**") agree as follows:

1.      <u>**Last Day of Employment**</u>.  Employee's last day of employment with Sprout is October 22, 2021.

2.      <u>**Severance Benefits**</u>.  In consideration of EMPLOYEE signing this Agreement and his compliance with the covenants and promises made herein, SPROUT agrees to pay EMPLOYEE Twenty one thousand six hundred and sixty six dollar and sixty seven cents ($21,666.67), less legally required deductions and withholdings for the month of December 2021, Sixteen thousand two hundred and fifty dollars ($16,250), less legally required deductions and withholdings for the month of January 2022, Eight thousand six hundred and sixty six dollars and sixty six cents ($8,666.66), less legally required deductions and withholdings for the month of February 2022 and Three thousand two hundred and fifty dollars ($3,250), less legally required deductions and withholdings for the month of March 2022.  These payments will be made according to the regular payroll schedule following the seven (7) day revocation period referenced in paragraph 6. EMPLOYEE acknowledges that these Severance Benefits are valuable consideration to which he would not be entitled in the absence of his consent to the terms of this Agreement, including the release of all claims contained in paragraph 3 and agreement to the cooperation, confidentiality, non-disclosure, and non-disparagement provisions in paragraphs 6, 7, 8, 9,10 and 11.

3.      <u>**General Release of Claims**</u>.  Except as to such rights or claims as may be created by this Agreement, EMPLOYEE, and anyone and any entity claiming through EMPLOYEE, including but limited to EMPLOYEE's heirs, administrators, successors in interest, assigns and agents, hereby release and forever discharge SPROUT and its affiliates and all of their past, present and future employees, officers, directors, members, agents, trustees, administrators, representatives, owners, shareholders, partners, insurers, fiduciaries, attorneys, subsidiaries, parent companies, affiliates, related entities, assigns, predecessors and successors in interest, and each and all of them, jointly and severally (referred to collectively hereafter as the "**Released Parties**"), from any and all liabilities, claims, causes of action, charges, complaints, obligations, costs, losses, damages, injuries, penalties, interest, attorneys' fees, and other legal responsibilities, of any form whatsoever, whether known or unknown, unforeseen, unanticipated, unsuspected or latent (referred to collectively hereafter as "**Claim**" or "**Claims**"), which EMPLOYEE has at any time owned or held as a result of actions or omissions from the beginning of time through the date of his execution of this Agreement.  Specifically included in this waiver and release are any and all claims of alleged employment discrimination, either as a result of his separation from employment or otherwise.  Without limiting the scope of this release, EMPLOYEE is specifically releasing any claims arising or which could have arisen out of his employment relationship with the Released Parties, including but not limited to causes of action or claims under the Age Discrimination in Employment Act, the Civil Rights Acts of Title VII of the Civil Rights Act of 1964, as amended, any other federal, state or local statute, law, ordinance, regulation or order that may give rise to

 **Sprout Mortgage**

any cause of action, and any claim based on violation of public policy, breach of contract, tort, fraud, misrepresentation, defamation, or any other common law claim.

As part of this Agreement, EMPLOYEE acknowledges and agrees that this Agreement extends to all claims or causes of action, of every nature and kind whatsoever, known or unknown, suspected or unsuspected, enumerated in this Agreement or otherwise. EMPLOYEE understands and agrees that he may hereafter discover presently unknown or unsuspected facts or claims different from or in addition to those she now knows or believes to be true as to the matters released herein. Nevertheless, it is EMPLOYEE's intention, through this Agreement, to fully, finally and forever release all such matters, and all claims related thereto, which do now exist, may exist or heretofore have existed.

The foregoing general release does not apply to any of EMPLOYEE's Claims that cannot be released as a matter of law. Nothing in this Agreement shall affect the United States Equal Employment Opportunity Commission's ("EEOC") rights and responsibilities to enforce the Civil Rights Act of 1964, as amended, or any other applicable law, nor shall anything in this Agreement be construed as a basis for interfering with EMPLOYEE's protected right to file a charge with, or participate in an investigation or proceeding conducted by the EEOC, the National Labor Relations Board ("NLRB") or any other federal or state administrative agency, provided, however, if the EEOC, NLRB or other administrative agency commences an investigation on EMPLOYEE's behalf, EMPLOYEE specifically waives and releases his right, if any, to recover any monetary or other benefits of any sort whatsoever arising from any such investigation.

4.     **Knowing and Voluntary Waiver.**  EMPLOYEE represents that he has carefully read and fully understands all of the provisions of this Agreement. EMPLOYEE knowingly and voluntarily is waiving and generally releasing all rights or claims that he has or might have against the Released Parties. EMPLOYEE represents and warrants that this Agreement is written in a manner calculated to be understood by his, that he is waiving rights and claims in exchange for consideration over and above anything of value to which he is already entitled. EMPLOYEE further declares and acknowledges that no representation made by any of the Released Parties, or by anyone on behalf of the Released Parties, has induced to sign this Agreement, and that EMPLOYEE is voluntarily acting upon his own best judgment, belief and knowledge of the nature and validity of any and all claims or potential claims.

5.     **Consideration Period and Revocation Period.**  EMPLOYEE acknowledges that he has been given at least 45 days within which to consider this Agreement. EMPLOYEE understands that if he accepts this Agreement before 45 days after receiving it, he has done so knowingly and voluntarily with the express intent of waiving any remaining portion of the 45-day period. EMPLOYEE further understands that for a period of seven (7) days following the execution of this Agreement, he may revoke this Agreement. This Agreement shall not become effective or enforceable until the revocation period has expired. Revocation must be made by delivering a written notice of revocation to Rebecca, Yoselowitz, Human Resources Director, at either 90 Merrick     Avenue,     Suite     505,     East     Meadow,     NY     11554     or     at



rebecca.yoselowitz@sproutmortgage.com, so that such written notice is received before the 7-day period revocation period expires. If EMPLOYEE does not revoke this Agreement within the 7-day revocation period, this Agreement will become effective at 12:01 a.m. on the 8th day after EMPLOYEE signs this Agreement. If EMPLOYEE revokes this Agreement as provided above, he will not receive the consideration specified in Paragraph 2 of this Agreement.

6.      **Payment**. EMPLOYEE agrees that the settlement payment described in Paragraph 2 above constitutes the entire amount of monetary consideration due to him under this Agreement and that he will not seek any further compensation from SPROUT for any other claimed damages, costs or attorneys' fees.

7.      **Covenant Not To Sue**. Except as permitted by the terms of this Agreement, EMPLOYEE has not and will not directly or indirectly institute any legal action against the Released Parties based upon, arising out of, or relating to any Claims released in this Agreement, his employment with SPROUT and/or his separation of employment with SPROUT. EMPLOYEE has not and will not directly or indirectly encourage and/or solicit any third party to institute any legal action against the Released Parties.

8.      **Cooperation**. EMPLOYEE agrees to provide assistance to SPROUT and its legal counsel as they may reasonably request of his in regard to any regulatory matters or litigation pending at the time of termination of his employment or subsequently initiated involving matters of which he has particular knowledge as a result of his employment with SPROUT.

9.      **Confidentiality**. Except as provided or required by law or otherwise set forth herein, EMPLOYEE agrees not to disclose any information regarding the existence or substance of this Agreement, except to his spouse, tax advisor, or an attorney with whom he chooses to consult regarding his consideration of this Agreement. However, if such disclosure is made to EMPLOYEE's representatives, including spouse, tax advisor or attorney, EMPLOYEE agrees and understands that such disclosure is for business or personal necessity, and each and any such permissible disclosures may be made only on the condition that such persons to whom information may be disclosed also agree to not further disclose the terms and conditions of this confidential Agreement. Notwithstanding any other provision hereof, this Agreement may be disclosed in an action brought to remedy a breach of this Agreement. Such disclosure shall be limited to those provisions necessary to remedy the breach.

10.      **Non-Disclosure of SPROUT's Trade Secrets, Confidential or Proprietary Information**. EMPLOYEE understands and agrees that will not, for any reason, disclose to others or use for the benefit of anyone other than SPROUT any trade secret, confidential or proprietary information of SPROUT or its clients, including, but not limited to, information relating to SPROUT customers, clients, employees, consultants, affiliates, partners, products, services, know-how, techniques, computer systems, programs, policies and procedures, research projects, future developments, costs, profits, pricing, customer and client business information. EMPLOYEE further understands and agrees that the use of any trade secret, confidential or proprietary

3

 Sprout Mortgage

information belonging to SPROUT, or a client of SPROUT shall be a material breach of this Agreement.

    a.    EMPLOYEE understands and agrees that any Confidentiality Agreement that EMPLOYEE may have executed during or in consideration of EMPLOYEE's employment that specified obligations beyond termination of employment is still in full force and effect.

    b.    EMPLOYEE will not, for a period of one (1) year, commencing upon the Effective Date, directly or indirectly, induce or influence or seek to induce or influence any person who is or will be hereafter engaged as an officer, employee, agent, independent contractor or otherwise by SPROUT to terminate their employment, engagement or other relationship with SPROUT.

11.    **Non-Disparagement and Sprout's Agreement to Provide Neutral Reference**.

    a.    EMPLOYEE shall not make any disparaging comments and/or statements about the Released Parties. The preceding sentence shall not apply to any communication or disclosure relating to any proceedings to enforce the terms of this Agreement or as otherwise expressly authorized by law or lawful process.

    b.    SPROUT will respond to any inquiries about EMPLOYEE's employment by providing only EMPLOYEE's date of hire, date of termination, and job title. EMPLOYEE will direct all such inquiries only to Rebecca Yoselowitz, Human Resources Director, who can be reached by telephone at 516-393-0265 or by email at Rebecca.yoselowitz@sproutmortgage.com.

12.    **Return of All Company Materials**. EMPLOYEE hereby certifies that he has returned to SPROUT all SPROUT records, documents, electronically stored information, and tangible embodiments of such, prepared by his or coming into his possession by virtue of his employment with SPROUT. EMPLOYEE further certifies that he has returned to SPROUT all property of SPROUT including but not limited to pagers, keys, key cards, cellular phones, credit cards, personal and laptop computers, and any other electronic equipment.

13.    **Unemployment Benefits**. Nothing in this Agreement prevents EMPLOYEE from filing a claim for unemployment benefits. Similarly, nothing in this Agreement prohibits SPROUT from providing truthful information concerning EMPLOYEE's termination if requested by the State Unemployment Department or any other governmental agency or lawful request.

14.    **Arbitration**. Except for claims for emergency equitable or injunctive relief which cannot be timely addressed through arbitration, the Parties hereby agree to submit any claim or dispute arising out of the terms of this Agreement to private and confidential arbitration by a single neutral arbitrator through Judicial Arbitration and Mediation Services, Inc. ("JAMS"). The JAMS Streamlined Arbitration Rules & Procedures in effect at the time of the claim or dispute is arbitrated will govern the procedure for the arbitration proceedings between the Parties. The



arbitrator in this matter shall not have the power to modify any of the provisions of this Agreement. The decision of the arbitrator shall be final and binding on all Parties to this Agreement, and judgment thereon may be entered in any court having jurisdiction. The party initiating the arbitration shall advance the arbitrator's fee and all costs of services provided by the arbitrator and arbitration organization. However, all the costs of the arbitration proceeding or litigation to enforce this Agreement, including attorneys' fees and costs, shall be paid as the arbitrator or court awards in accordance with applicable law. The Parties hereby waive any right to a jury trial on any dispute or claim covered by this Agreement.

15. **Governing Law and Interpretation**. This Agreement shall be governed and conformed in accordance with the laws of the State of New York, without regard to its conflicts of law principles. Any uncertainty or ambiguity in the Agreement shall not be construed for or against any Party based on the attribution of drafting to any Party.

16. **Severability**. In the event that any provision of this Agreement is held to be void, null or unenforceable, the remaining portions shall remain in full force and effect.

17. **No Admission of Wrongdoing**. This Agreement resolves all disputed claims that EMPLOYEE made have against the Released Parties. EMPLOYEE and SPROUT agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed as an admission of liability or wrongdoing on the part of the Released Parties, nor shall they be admissible as evidence in any proceeding other than for the enforcement of this Agreement.

18. **Modification**. This Agreement cannot be modified in any respect except in a written instrument signed by both EMPLOYEE and SPROUT.

19. **Entire Agreement**. This Agreement sets forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any confidentiality agreement between EMPLOYEE and SPROUT which shall remain in full force and effect. EMPLOYEE acknowledges that he has not relied on any representations, promises, or agreements of any kind made to his in connection with his decision to accept this Agreement, except for those set forth in this Agreement.

20. **Counterparts**. This Agreement may be executed by the Parties in counterparts, which are defined as duplicate originals, all of which taken together shall be construed as one document. A signature by facsimile or email on this Agreement shall be as legally binding as an original signature.

21. **Acknowledgment**. By signing the Agreement, EMPLOYEE acknowledges that he has read this Agreement, fully understands the contents of this Agreement, freely, voluntarily and without coercion enters into this Agreement, and is signing it with full knowledge that it is intended, to the maximum extent permitted by law, as a complete release and waiver of any and all claims against SPROUT and the Released Parties. By signing the Agreement, EMPLOYEE affirms that he has full authority to enter into this Agreement and to be bound by it, and that he is

5

 **Sprout Mortgage**

knowingly and voluntarily entering into this Agreement free of any duress or coercion. SPROUT hereby advises EMPLOYEE in writing to consult with an attorney of his choice prior to execution of this Agreement.

**PLEASE READ CAREFULLY. THIS AGREEMENT INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

_____

**Michael Johnston**

**On Behalf of SPROUT,**

Dated: _____

_____

**Rebecca Yoselowitz**
**Human Resources Director**

Dated: _____

As a follow up to your conversation with Shea, attached, please find the referenced agreement for your review. This email serves as confirmation that you will receive your full salary and remain active on the benefit plans for the month of November.
The additional pay and benefits beyond November are contingent upon acceptance of the agreement attached. Please note you have 45 days to review, sign and return the agreement to my attention. Once we receive the document back, we must wait 7 days (revocation period) before your payments can commence.

You will be eligible for Cobra once your benefits end date is confirmed.

You will also receive a shipping label to return any equipment you might have.

Please let me know if you have any questions.

Thanks,

Rebecca



<image001.png>

**Rebecca Yoselowitz**
**Director of Human Resources**
**O: 516.393.0265**
rebecca.yoselowitz@sproutmortgage.com
90 Merrick Avenue
East Meadow, NY 11554

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain proprietary, confidential and/or privileged information.If you are not the intended recipient of this message, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited. If this message has been addressed to you in error, please immediately alert the sender and delete this message and any attachments from all computers.

CONFIDENTIALITY NOTICE: The contents of this email message and any attachments are intended solely for the addressee(s) and may contain proprietary, confidential and/or privileged information.If you are not the intended recipient of this message, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited. If this message has been addressed to you in error, please immediately alert the sender and delete this message and any attachments from all computers.